**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Michael K. HEBEKA, Defendant–**
**Appellee.**

No. 95–3040.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 28, 1995.

Decided July 16, 1996.

David O. Bauer, Asst. U.S. Atty., Office of the U.S. Attorney, Western Division, Toledo, OH, Richard A. Friedman (argued and briefed), U.S. Dept. of Justice, Criminal Division, Appellate Section, Washington, DC, for U.S.

Norman G. Zemmelman (argued and briefed), Britz & Zemmelman, Toledo, OH, for Michael K. Hebeka.

Before: BOGGS and DAUGHTREY, Circuit Judges; McKEAGUE, District Judge.*

DAUGHTREY, Circuit Judge.

This case is before the court on appeal for the second time. The defendant, Michael Hebeka, was originally charged and convicted under a three-count indictment with food-stamp fraud. *See United States v. Hebeka,* 796 F.Supp. 268 (N.D.Ohio 1992)(*Hebeka I* ). On the initial appeal, we determined that conviction under both Counts 1 and 2 of the indictment violated the Double Jeopardy Clause and suggested that the district court should also "consider whether a consecutive sentence as to Count 3 is authorized under double jeopardy analysis." *United States v. Hebeka,* 25 F.3d 287, 291 (6th Cir.1994)(*Hebeka II* ). On remand, the district court set aside the third count of the indictment, finding that it violated the Double Jeopardy Clause. The district court then sentenced Hebeka under pre-guidelines sentencing provisions, in conformity with its prior determination that the sentencing guidelines were inapplicable to Hebeka even though the criminal conduct for which he was convicted "straddled" the date the guidelines took effect. *Hebeka I,* 796 F.Supp. at 273.

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

The government now appeals, contending that conviction under both Counts 1 and 3 is constitutionally permissible and, moreover, that the district court should have sentenced the defendant under the sentencing guidelines. We conclude that the district court was correct in setting aside the conviction under Count 3 of the indictment, but that the case must be remanded for resentencing under the sentencing guidelines.

## FACTUAL BACKGROUND

By this time, the facts in this case are well-documented and no longer open to dispute. In 1984, Hebeka owned a grocery store in Toledo that was licensed to accept government food stamps. That year, he was convicted of food-stamp fraud and barred for life from participating in the program. Nevertheless, in April 1985, Hebeka made a sham sale of the market to one Dennis Alfred, specifically to allow Hebeka to circumvent his banishment from the federal food-stamp program. At Hebeka's request, Alfred submitted a false application to obtain a new license so that the market could continue to accept food stamps. The application failed to disclose that Hebeka was the store's constructive owner and its manager, in violation of the program's regulations. From April 1985 until May 1991, Hebeka redeemed $7.2 million in food stamps through the store, while selling only $3.9 million worth of food. Of the $7.2 million, $3.45 million of the food stamps had been purchased for cash.

In 1991, Hebeka was indicted for two violations of the Food Stamp Act, 7 U.S.C. § 2024(c), and one violation of the fraudulent claims statute, 18 U.S.C. § 287. Count 1 charged Hebeka with redemption of $7.2 million worth of food stamps to the Department of Agriculture. Count 2 charged that between January 1986 and May 1991, Hebeka presented the Department of Agriculture with $3.45 million worth of food stamps that had been purchased for cash. Count 3 charged that between April 1985 and May 1991, Hebeka made false claims to the Department of Agriculture by presenting $7.2 million worth of food stamps for redemption to the Department of Agriculture.

Hebeka was convicted on all three counts after a jury trial in January 1992. The district court sentenced him to concurrent five-year sentences on the first two counts and to a consecutive five-year sentence on Count 3. At sentencing, the defendant objected to the use of the sentencing guidelines, on the ground that they could not be applied to conduct occurring before the effective date of the Sentencing Reform Act, November 1, 1989. Finding that the offenses for which the defendant had been convicted were not "continuing offenses," the district court held that the sentencing guidelines did not apply, even though the misconduct "straddled" the effective date of the Sentencing Reform Act. *Hebeka I,* 796 F.Supp. at 272–73.

Hebeka appealed his conviction, arguing that Counts 1 and 2 were multiplicitous. We agreed, holding that the two counts should merge, because they "overlap in respect to the amount of food stamps presented illegally." *Hebeka II,* 25 F.3d at 290. We remanded the case with an order to vacate one of the first two counts and to resentence Hebeka accordingly, adding that the district court should consider the double jeopardy implications of convictions on both § 2024(c), the Food Stamp Act, and § 287, the general fraudulent claims statute.

On remand, the district court not only vacated the defendant's conviction on Count 2, as directed by this court on appeal, but also vacated the conviction on Count 3, finding that the false claims conviction was for the "same offense" under the Double Jeopardy Clause as the remaining conviction for food stamp fraud. The district judge ruled that "[t]he statutory elements of both § 2024(c) and § 287 are identical. In fact, both statutes seek to protect the same victims and the same interest—the property of the United States government." The district court also ruled that the government had waived its argument concerning the applicability of the sentencing guidelines to Hebeka's conviction and sentenced the defendant under pre-guidelines provisions to five years incarceration.

The government now appeals both the district court's decision to vacate Count 3 and

its failure to sentence the defendant under the sentencing guidelines.

## THE DOUBLE JEOPARDY ISSUE

The Fifth Amendment of the United States Constitution grants individuals protection from being "subject for the same offense to be twice put in jeopardy of life or limb." The Double Jeopardy Clause prohibits multiple punishments for the same criminal offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The long-established test to determine whether a violation of this right has occurred is that of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in which the Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact that the other does not." *Id.* at 304, 52 S.Ct. at 182.

As we noted in *Hebeka I,* because of refinements of *Blockburger* in recent Supreme Court decisions, the test applies "only after other techniques of statutory construction have proved to be inconclusive. The first step is for the court to inquire 'whether Congress intended to punish each statutory violation separately.'" *Pandelli v. United States,* 635 F.2d 533, 536 (6th Cir.1980)(quoting *Jeffers v. United States,* 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977)). In this case, as we further noted in *Pandelli,* there appears to be nothing in the legislative history that addresses the issue of multiple punishments under the Food Stamp Act, 7 U.S.C. § 2024(c), *id.* at 536, nor has our research turned up any information concerning Congressional intent with regard to prosecutions both under the fraudulent claims statute, 18 U.S.C. § 287, and under more specific fraud legislation, such as that contained in the Food Stamp Act. We are thus left to apply the *Blockburger* test to facts of this case.

Section 2024(c) of the Food Stamp Act provides that "[w]hoever presents, or causes to be presented, coupons for payment or redemption of the value of $100 or more,

knowing the same to have been received, transferred, or used in any manner in violation of the provisions of this chapter or the regulations issued pursuant to this chapter, shall be guilty of a felony." Section 287 provides that "[w]hoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years."

The government argues that each of these provisions requires proof of an element that the other does not, thus making them separate offenses for purposes of the Double Jeopardy Clause. The argument goes something like this: The Food Stamp Act addresses the presentation of fraudulent claims made as the result of *violations of the Act or the regulations promulgated under the Act,* which the general fraud statute obviously does not, while the fraudulent claims statute requires the presentation of a fraudulent claim *to an agency of the government,* an element missing from the Food Stamp Act. Fraudulent food stamp coupons, for example, could be presented to a bank for redemption, rather than to a federal agency, and a violation of § 2024(c) would nevertheless result.

As the defendant points out, however, § 287 does not require that the person committing the fraud submit the claim directly to the government. He cites *United States v. Murph,* 707 F.2d 895 (6th Cir.)(per curiam), *cert. denied,* 464 U.S. 844, 104 S.Ct. 145, 78 L.Ed.2d 136 (1983), to support his argument. In *Murph,* the defendant was charged with violating § 287 for fraudulently claiming a tax refund. He took his false return to a "tax return discounter" and received 50 percent of the refund and the other 50 percent would be sent to the discounter. Murph argued "that he did not cause the tax discounter to make the claim for the refund; rather, that his scheme ended when he sold the fraudulent tax return to the discounter and that he had no interest in whether the return was ever filed or not." *Id.* at 896.

The claim to the government was made by the discounter who acted independently. Thus, he argued, he did not cause the fraudulent claim to be filed. This court, however, ruled that Murph "knew when he sold the return to the discounter that the discounter was buying it for the purpose of presenting it to the government for a refund." *Id.* The discounter's actions were reasonably foreseeable by the defendant, making him liable for the making of the fraudulent claim.

We note, further, that the Supreme Court has also addressed the issue of liability attaching for fraudulent claims made through intermediaries, in the process of analyzing R.S. § 5438, the statutory precursor to the current § 287. *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). In *Hess,* electrical contractors had entered contracts with the local government for work through the Public Works Act, but a significant portion of the funding came from the federal government. They were charged under § 5438 for defrauding the government for collusive bidding. *Id.* at 539, 63 S.Ct. at 382. The predecessor statute provided that "every person who ... *causes* to be presented, for payment ... any claim upon or against the Government of the United States ... knowing such claim to be ... fraudulent" is liable. *Id.* at 542, 63 S.Ct. at 383 (emphasis added). The Court found that by their conduct, the defendants caused the government to pay claims presented by local agencies. The Court thus held that a defendant did not need "direct contractual relations with the government" to commit the fraud.

Other circuits have subsequently discussed the applicability of the Supreme Court's reasoning in *Hess* to § 287. *See United States v. Blecker,* 657 F.2d 629, 633–34 (4th Cir. 1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982); *United States v. Catena,* 500 F.2d 1319, 1322–23 (3rd Cir.), *cert. denied,* 419 U.S. 1047, 95 S.Ct. 621, 42 L.Ed.2d 641 (1974). In *Blecker,* the Fourth Circuit found that the deletion of the word "cause" from the later statute did not prevent liability: "The Reviser's Note to section 287 ... makes it clear that the 'cause' language was omitted as unnecessary in view of

Congress' enactment of 18 U.S.C. § (2)(b)." 657 F.2d at 634.

Similarly, this court has found that § 287 liability can attach when health care providers submit false Medicare/Medicaid claims to private insurance carriers, which in turn submit them to a government agency. *See United States v. Campbell,* 845 F.2d 1374 (6th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 248 (1988). The defendant in *Campbell* was an ophthalmologist who treated persons qualifying for Medicare and Medicaid. He would submit these claims to Nationwide Insurance, which processed them for a division of the Department of Health and Human Services. Nationwide paid a portion of the claim to the defendant before submitting it the government for reimbursement. The defendant was indicted and charged with billing for unnecessary and inappropriate procedures. We held that "where a physician submits a medicare claim to the government through an insurer, and the physician knows that the treatments were unnecessary or non-therapeutic, he or she is criminally liable under section 287." *Id.* at 1382.

Other circuits have likewise held that the actual presentation of a claim to a government agency is not necessary to satisfy § 287. The Second Circuit, for example, found that conviction is still proper when a defendant has "caused Blue Cross and Travelers to file the claims with HEW." *United States v. Precision Medical Laboratories, Inc.,* 593 F.2d 434, 443 (2d Cir.1978). Similarly, in *Catena,* the Third Circuit found criminal liability for physicians who submit false claims to Blue Shield and Travelers. The court rejected the government's argument that the private insurance carriers were also agencies of the government based on the contracts between them. *Catena,* 500 F.2d at 1322. Instead, it upheld the jury's verdict based "on the theory that the defendant 'caused' the private insurance carriers themselves to submit his false claims to the Department of Health, Education and Welfare (HEW) and to the Railroad Retirement Board, which are clearly federal agencies." *Id. See also United States v. Hooshmand,* 931 F.2d 725 (11th Cir.1991), in which the

court rejected a claim by the defendant physician, charged with submitting fraudulent claims under Medicare, that the indictment suffered from a fatal flaw in that it did not assert he submitted the claims to the government but to Blue Cross.

In a case dealing with welfare fraud similar to Hebeka's food stamp fraud, the Fifth Circuit rejected a similar defense involving the presentation of false claims to a state government agency, which, in turn sought reimbursement from the federal government. *See United States v. Beasley,* 550 F.2d 261 (5th Cir.), *cert. denied,* 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977). There the defendants "were involved with a social-economic welfare program funded by federal-state cooperation ... [to] provide family planning services to families receiving benefits through the Aid to Dependent Children program." *Id.* at 264. The defendants through Family Health Foundation presented claims for "construction costs for 15 mobile modular clinics which were never constructed." *Id.* The Foundation billed the state of Louisiana, which paid for the costs and sought reimbursement from the federal government. The Fifth Circuit held that the defendants could be held liable for claims made through intermediaries because they knew that the state would rely on those claims and present them to the federal government. *Id.* at 271–74.

The Fourth Circuit reached a similar conclusion in *Blecker,* noting that "the government alleged in its indictment of Icarus and Blecker that the defendants submitted invoices for fees based on false resumes to the Computer Sciences Corporation (CSC) knowing that CSC, in turn, would present the claims to the General Services Administration (GSA) for payment." 657 F.2d at 631. The evidence revealed that the defendants knew the false submissions to CSC would be submitted for reimbursement from the government. The court held that the use of the intermediary to cause the fraud violated § 287. *Id.* at 633–34.

From these cases, it is abundantly clear that proof of the presentation of a false claim directly to a government agency is not necessary to convict under § 287. It follows from this analysis that § 287 does not require proof of a fact that is not required by § 2024(c) and that conviction under both sections, at least under the facts of this case and given the allegations contained in the indictment returned against Hebeka, violates the Double Jeopardy Clause of the Fifth Amendment. The district court did not err in setting aside Count 3 of the indictment.

## THE SENTENCING ISSUE

■ *Waiver.* We deal first with the defendant's argument that the government has waived the issue of sentencing under the guidelines by voluntarily withdrawing its cross-appeal at an earlier stage of the proceedings. The government takes the position that it could not present two entirely contrary arguments on the initial appeal—that in order to salvage convictions under both Counts 1 and 2, the government had to argue on appeal that the convictions under § 2024(c) were multiple separate offenses, and not a continuing offense. The government argues that in *Hebeka I,* this court ruled, in effect, that the offense was a continuing one, for purposes of determining multiplicity. Only then, the government insists, could it reasonably change direction and pursue the argument that the sentencing guidelines apply because the offense straddles the effective date of the guidelines. We find this argument persuasive.

■ Moreover, the "law of the case" doctrine has little applicability in the sentencing arena. As we have previously noted, "there appears to be no prohibition in the guidelines, or in the case law interpreting the guidelines, keeping a district court judge from revisiting the entire sentencing procedure unless restricted by the remand order." *United States v. Duso,* 42 F.3d 365, 368 (6th Cir.1994). In *United States v. Moored,* 38 F.3d 1419, 1422 (6th Cir.1994), we defined exceptions to the "law of the case" doctrine created by "several circuits [which give] broad discretion to the district court to reconsider sentencing factors on a sentencing remand." Hence, "absent explicit limitations in the appellate court's mandate, an order vacating a sentence and remanding the case for resentencing 'directs the sentencing court

to begin anew', so that 'fully *de novo* resentencing' is entirely appropriate.'" *Id.* Nothing in our initial opinion limited the court below from resentencing *de novo,* and nothing prevents us from now reviewing the action taken by the district court on remand.

 *Application of the Guidelines.* The defendant argues that Count 1, the only remaining charge against him, does not establish the existence of an offense that is continuing in nature but rather alleges individual offenses over a period of time. He thus contends that pre-guidelines sentencing is appropriate. In response, the government points to our determination in *Hebeka I* that the defendant was engaged in "a single pattern of fraud," *Hebeka II,* 25 F.3d at 290, and argues that having been given the benefit of a conviction on a single count for felonious activity stretching over a six-year period, he should be sentenced as if convicted for a continuing offense. Thus, the government insists, the sentencing guidelines, having taken effect during the six-year period while Hebeka's fraudulent scheme was ongoing, should be applied in this case under the authority of *United States v. Barger,* 931 F.2d 359, 365 (6th Cir.1991).

We agree. In our prior opinion, we noted that requiring the government to indict defendants for similar offenses in a single count was to protect them from the "danger of inappropriate multiple punishments for a single criminal episode." *Hebeka II,* 25 F.3d at 290. Having reaped the benefit of such a ruling with respect to multiple convictions, and being thus subject to sentencing for only a "single criminal episode," it ill behooves the defendant now to insist that he not be sentenced as if for a continuing offense.

We conclude that the sentencing issue is controlled by our opinion in *United States v. Buckner,* 9 F.3d 452, 454 (6th Cir.1993). In that case, the defendant was convicted of bank fraud in violation of 18 U.S.C. § 1344. She appealed her sentence under the guidelines, arguing that her fraudulent activities began before the effective date of the guidelines, and that she was therefore subject to pre-guidelines sentencing. Buckner had obtained a number of fraudulent loans "by using the names and social security numbers of various family members and of customers at her place of employment." *Id.* at 453. She applied for and received these loans both before and after the effective date of the guidelines. We held that "[Buckner's] fraudulent activity ... constitutes a continuing offense" for purposes of sentencing, and we applied the guidelines "to the entire scheme of bank fraud to which the defendant pled guilty, whether or not the individual fraudulent loans were initiated before or after November 1, 1989," the effective date of the guidelines. *Id.* at 454.

It follows that the sentence in this case should have been calculated under the sentencing guidelines. We therefore **AFFIRM** the district court's judgment to the extent that it sets aside the defendant's conviction under Count 3 of the indictment, but we **VACATE** the sentencing order and **REMAND** for resentencing in conformity with this opinion.