95 F.3d 1153
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Danilo BARO and Ramon Baro, Defendants-Appellants.
 No. 95-1372.
 United States Court of Appeals, Sixth Circuit.
 Aug. 28, 1996.
 
 Before: MARTIN and DAUGHTREY, Circuit Judges; and BECKWITH, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Danilo and Ramon Baro appeal the district court's finding during resentencing, for the purposes of determining each defendant's base offense level, that each was responsible for the purchase and/or sale of more than fifty kilograms of cocaine during the course of their conspiracy. Finding no error, we AFFIRM.
 
 
 2
 The Baros participated in a large cocaine distribution conspiracy operating between Miami and Detroit. After indictment and a jury trial, the defendants were convicted of various offenses related to their participation in the conspiracy. In calculating each defendant's sentence, the district court found each defendant accountable for at least fifty kilograms of cocaine, and sentenced Danilo Baro to twenty-six years and eight months' imprisonment, and Ramon Baro to twenty-one years and eight months' imprisonment. The defendants appealed, and this Court affirmed their convictions, but remanded for resentencing. See United States v. Baro, 15 F.3d 563 (6th Cir.), cert. denied, 115 S.Ct. 285 (1994). We explained that:
 
 
 3
 At the sentencing hearing, counsel for the Baros noted that testimony linked the Baros, at best, to the distribution of forty-nine kilograms of cocaine. In response, the government alleged that testimony regarding travel by Suarez and Dupont [two persons who purchased cocaine from the Baros] to Miami, coupled with a pattern of kilogram-quantity sales of cocaine by the Baros, was sufficient to support an inference that the Baros distributed a[t] [sic] least one additional kilogram of cocaine, thereby warranting a two-level increase in the base offense level under the Sentencing Guidelines. The district court, without making any factual findings to support the one-kilogram increase, sentenced Danilo and Ramon Baro according to the fifty-kilogram calculation.
 
 
 4
 Id. at 569. Remand was appropriate, we held, because the district court "failed to identify the evidence on which it relied to find both defendants responsible for the increased amount [from forty-nine to fifty kilograms] or to address the testimony in the record that Dupont traveled to Miami during this period for legitimate reasons." Id. Accordingly, we remanded for resentencing, stating that the "district court should explicitly set forth the evidence on which it relies if it finds either Danilo and Ramon accountable for distribution of at least fifty kilograms of cocaine." Id.
 
 
 5
 On remand, the district court held a telephone conference call with counsel, accepted briefs from the parties, and thereafter issued a written order making further fact findings. In doing so, the district court reaffirmed its original determination that each defendant could be held accountable for at least fifty kilograms of cocaine. This determination resulted in a base offense level of thirty-six for each defendant, and the district court concluded that the defendants were properly sentenced at their original sentencing hearing. The defendants filed a timely appeal, claiming that the district court exceeded this Court's remand mandate in resentencing each defendant. Ramon Baro also claims that he cannot be held accountable for the purchase and sale of one kilogram of cocaine between Danilo Baro and Rolando Arango (a coconspirator in the enterprise), because Ramon was not a party to the conspiracy at that time.
 
 
 6
 Defendants' first assignment of error is that the district court misconstrued this Court's remand order as an order to revisit the drug accountability of each defendant as a whole, in order to determine whether each defendant could be held accountable for at least fifty kilograms of cocaine. Rather, the defendants claim that this Court's order was not concerned with the first forty-nine kilograms for which each defendant was accountable. Under defendants' theory, we remanded only for a determination whether the facts supported an inference that the defendants were accountable for one additional kilogram. Reconsideration of all of the evidence to determine whether each defendant was accountable for fifty kilograms of cocaine allowed the government and the district court, according to the defendants, to reconstruct the theory of the defendants' drug accountability in order to reach the fifty kilogram minimum. The thrust of defendants' argument is unintelligible without an extensive recitation of the facts, which we will summarize as stated in our previous opinion in this case:
 
 
 7
 [The Baros] and five other defendants were charged with conspiracy to possess with intent to distribute cocaine and distribution of cocaine.... Danilo Baro, with the assistance of his brother, Ramon, ran a cocaine distribution operation out of Miami, Florida. Over an approximately two-year period beginning in June 1988, the Baros sold a substantial quantity of cocaine to various Detroit-based associates, including Rolando Arango, Victor Suarez, and Alberto Dupont.
 
 
 8
 Baro, 15 F.3d at 564. The defendants were eventually arrested, indicted, and a jury trial ensued.
 
 
 9
 .... To establish the total amount of cocaine distributed by the Baros during the conspiracy, the government relied upon testimony from three sources: Rolando Arango, Elaine Dunkcan, and Alberto Dupont.
 
 
 10
 First, Arango testified at trial that he received a total of about forty-two kilograms of cocaine from the Baros on ten separate occasions. In particular, Arango testified that he arranged through Danilo Baro to obtain one kilogram of cocaine in July 1988. Later that summer, Ramon Baro twice delivered two kilograms of cocaine to Arango in Detroit. During the remainder of 1988, Arango received from Danilo Baro, via unidentified couriers, four shipments totaling about twenty-eight kilograms of cocaine. Finally, in early 1989, Arango traveled to Miami with Suarez on three occasions, purchasing a total of seven kilograms from Danilo Baro and receiving two additional kilograms of cocaine to hold for Ramon Baro.
 
 
 11
 Elaine Dunkcan, Suarez's girlfriend during 1988 and 1989, testified at trial that she was aware that Suarez received between two and five kilograms of cocaine from the Baros. First, Dunkcan accompanied Suarez and Dupont to Miami in 1989 and observed the men receive two or three kilograms of cocaine from the Baros. Dunkcan also recounted that soon after she and Suarez returned to Detroit from a trip to Miami in January, 1990, they were arrested as they attempted to deliver the second of two kilograms of cocaine to a confidential informant. Dunkcan was unable to confirm, however, that either Danilo or Ramon Baro was the source of these two kilograms.
 
 
 12
 Finally, the government credits the Baros as the source of two kilograms of cocaine recovered by the police from a car parked at Dupont's house. The car was registered to Ramon Baro. According to police testimony at trial, Dupont stated after his arrest that he had transported the cocaine to Detroit for Suarez.
 
 
 13
 .... At sentencing, the government argued, and the district court agreed, that the conspiracy involved at least fifty kilograms of cocaine--forty-two kilograms obtained by Arango, five kilograms identified by Dunkcan, two kilograms recovered from Dupont, and at least one additional kilogram based on evidence that Suarez and Dupont made regular trips to Miami during this period.
 
 
 14
 Id. at 565-66.
 
 
 15
 After the initial appeal and remand in this case, the government conceded at the second sentencing hearing that the facts recounted above account for forty-eight, rather than forty-nine kilograms of cocaine. Accordingly, the district court examined the evidence adduced at trial to determine whether the Baros were accountable for two additional kilograms of cocaine. In its written sentencing order, the court stated:
 
 
 16
 There are at least three pieces of evidence which link defendants to distributions within the conspiracy of an additional two kilograms of cocaine distribution. First, two kilograms of cocaine were distributed by Suarez in January, 1990. Elaine Dunkcan's trial testimony links defendants to that cocaine. Dunkcan testified that she traveled with Suarez to Miami around New Year's Day, 1990. Dunkcan further testified that while in Miami, Suarez delivered money to defendant Danilo Baro. When they returned from Miami, Suarez distributed two kilograms of cocaine to Joe Arriaga. No credible evidence was presented at trial that Suarez had any suppliers of cocaine other than defendants....
 
 
 17
 Second, Dunkcan's testimony that Suarez and Dupont made frequent trips to Miami to buy cocaine further supports the court's finding that defendants distributed other kilograms of cocaine. Dunkcan also testified about trips also made by Dupont and Suarez to Miami for the sole purpose of buying cocaine. Hotel records corroborate her testimony and reveal at least nine additional trips.
 
 
 18
 ....
 
 
 19
 .... The court finds that the government has established by credible evidence that Suarez and Dupont purchased at least an additional two kilograms of cocaine from the defendants during their frequent trips to Miami for no legitimate purpose.
 
 
 20
 A third piece of evidence presented at trial also supports at least an additional two kilograms. Dunkcan testified that on one occasion she saw Suarez and Dupont stuffing cocaine behind the ceiling tiles of her apartment, shortly after Dupont returned from Miami. Because the defendants dealt only in kilogram quantities of cocaine, and because Suarez and Dupont purchased cocaine exclusively from defendants, it is more likely than not that the cocaine hidden behind Dunkcan's ceiling tiles links defendants to additional kilograms of cocaine.
 
 
 21
 The essence of the defendants' complaint is that this Court's mandate on remand directed the district court to consider only whether specific facts supported the conclusion reached at the prior sentencing that the Suarez-Dupont trips to Miami more likely than not involved at least one kilogram of cocaine accountable to the Baros. In other words, the Baros claim that the district court should not have considered the facts presented at trial as a whole to determine whether sufficient additional kilograms of cocaine were accountable to them to reach the minimum of fifty kilograms required for a base offense level of thirty-six.
 
 
 22
 We begin by noting that "there appears to be no prohibition in the guidelines, or in the case law interpreting the guidelines, keeping a district court judge from revisiting the entire sentencing procedure unless restricted by the remand order." United States v. Hebeka, 89 F.3d 279, 284 (6th Cir.1996) (quoting United States v. Duso, 42 F.3d 365, 368 (6th Cir.1994)). Accordingly, the district court has "broad discretion" on remand to "reconsider sentencing factors on a sentencing remand." United States v. Moored, 38 F.3d 1419, 1422 (6th Cir.1994). In Moored, we explained that, "absent explicit limitations in the appellate court's mandate, an order vacating a sentence and remanding the case for resentencing 'directs the sentencing court to begin anew, so that 'fully de novo resentencing' is entirely appropriate.' " Id. (internal quotations omitted).
 
 
 23
 Here, we gave no "explicit limitations" to the district court in remanding this case for resentencing. We simply stated that the "district court should explicitly set forth the evidence on which it relies" in order to hold the defendants accountable for fifty kilograms of cocaine. Nothing in our opinion suggests that the district court was limited to considering a particular portion of the evidence, nor was the district court required to adopt a certain theory as to how the defendants could be accountable for fifty kilograms of cocaine. Rather, the district court was entitled to consider all of the evidence in the record in order to determine the appropriate amount of cocaine attributable to each defendant. The district court did precisely that. Accordingly, the court committed no error in examining all of the evidence in the record to support its conclusion that fifty kilograms of cocaine were attributable to each defendant.
 
 
 24
 Ramon Baro also argues that the district court erred by holding him responsible for the first kilogram of cocaine purchased from Danilo Baro by Rolando Arango. He claims that there is no evidence that he was a part of the conspiracy at the time of this delivery, and that he therefore should not be held accountable for this kilogram of cocaine. This dispute is essentially a factual one; the question is whether Ramon Baro was a partner to his brother at the time of the sale of the first kilogram of cocaine to Arango.
 
 
 25
 We review this claim for clear error. See Baro, 15 F.3d at 568-69. No such error occurred here. In rejecting this claim below, the district court explained that the evidence warranted a finding that Ramon Baro was intimately involved in this conspiracy at all relevant times. Baro carried cocaine from Miami to Detroit, and the proceeds back to Miami, several times. Perhaps most persuasive, is that fact that Ramon Baro delivered cocaine to Arango in Detroit only two weeks after Arango received the initial kilogram from Danilo, a fact which the defendant does not dispute. Accordingly, the district court committed no clear error in finding that Ramon Baro was involved in this conspiracy from its inception, and therefore was accountable for the initial kilogram of cocaine delivered to Arango by Danilo Baro.
 
 
 26
 Finally, we note that the defendants dispute many of the factual findings made by the district court during the resentencing hearing, and the conclusions to be drawn from them. Our review of the record leads us to conclude that the district court's findings are not clearly erroneous. In sum, the evidence supported the inferences drawn by the district court in calculating the amounts of cocaine accountable to each defendant.
 
 
 27
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation