IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35357-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DUANE EDWARD GRAY, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — A jury found Duane Gray guilty of "redeeming" food stamp benefits after he improperly used another person's benefits to purchase food at a grocery store. Concluding that the redemption statute applied only to merchants and others who seek reimbursement by the government for food stamp benefits previously used by a consumer, the trial court arrested judgment because the information did not charge a crime. We agree and affirm.

FACTS

Mr. Gray was captured on video camera using a food stamps EBT[1] card at Anderson's Grocery Store in Republic on four occasions over a four day period. The card belonged to a couple from Moses Lake. Upon noticing that their card was gone, the

---

[1] Electronic benefits transfer.

couple obtained a new card. When they attempted to use the new card, however, they

discovered that no benefits remained in their account. An investigation of computer

records revealed when and where the EBT card had been used. That information allowed

Andersons to identify Mr. Gray on its video records as the person who used the card on

each occasion.

The case was tried in the Ferry County Superior Court on four counts of unlawful

redemption of food stamp benefits in violation of RCW 9.91.144.[2] Although the crime is

a class C felony, the amended charging document identified three of the offenses as gross

misdemeanors and only one count as a felony.[3] At the conclusion of the State's

thoroughly documented case, the defense moved to dismiss the charges on the basis that

the charging document did not state a crime. The trial court denied the motion and the

case proceeded to jury verdict. The jury found Mr. Gray guilty on all four counts.

Mr. Gray moved to arrest judgment. The parties briefed and argued the motion.

The trial court granted the motion, deciding that the redemption statute did not apply to

someone who used an EBT card to purchase food and, therefore, that the charging

document did not state a crime against Mr. Gray.

---

[2] Additional unrelated charges also were filed, but all of those charges were resolved prior to jury trial.

[3] The offenses were classified in this manner at the behest of the trial judge, who looked at the valuation requirements of 7 U.S.C. § 2024(c) and grafted the federal crime classifications on to the state redemption statute, RCW 9.91.144. Report of Proceedings at 71-74. Although not at issue in this appeal, that ruling is dubious.

No. 35357-5-III
*State v. Gray*

The trial court entered findings of fact and conclusions of law in support of the ruling. The State timely appealed to this court. A panel heard oral argument on the case.

ANALYSIS

The State's appeal raises three contentions, although we need only address one of the arguments. We conclude from congressional and legislative history that retail customers do not "redeem" food stamp benefits, as that word is used in federal and state criminal statutes, when they purchase food. Although undefined in the relevant federal and state criminal statutes, "redeem" is a term of art under the Food Stamp Act of 1964. We first address the history of the food stamp program and the anti-fraud statutes adopted by Congress before turning to related Washington criminal statutes.

*Federal Law*

The food stamp program was enacted by Congress in 1964. Pub. L. No. 88-525, § 15, 78 Stat. 708. Throughout the past half-century, the act's purpose has remained the same—the promotion of nutrition among low-income households. *E.g.*, Food Stamp Act of 1977, Pub. L. No. 95-113, § 1301, 91 Stat. 958; *Moses v. Dep't of Soc. & Health Servs.*, 90 Wn.2d 271, 273, 581 P.2d 152 (1978). The program is administered through the United States Department of Agriculture (USDA). In grossly oversimplified terms, the program works as follows: the federal government approves and pays merchants for accepting food stamp benefits and provides some financial support for administrative expense to the States, which must administer the program in accordance with federal

3

guidelines, determine the eligibility of recipients, and provide benefits to them.[4]  7 U.S.C.

§§ 2014, 2018, 2020, 2025.[5]

As the government that both authorizes merchants to accept food stamp benefits

and reimburses them for doing so, the federal government from the beginning was

authorized to combat fraud using both civil and criminal statutes.  Pub. L. No. 88-525, §§

9, 11, 13-14.  From that beginning in 1964, the term "redeem" had a specific meaning,

even if it did not have a definitional statute:

REDEMPTION OF COUPONS

SEC. 9.  Regulations issued pursuant to this Act shall provide for the
redemption of coupons accepted by retail food stores through approved
wholesale food concerns or through banks, with the cooperation of the
Treasury Department.

Pub. L. No. 88-525.

The provisions of that section today are found in 7 U.S.C. § 2019, which provides,

in heavily edited part, methods by which benefits may be redeemed:

Regulations issued pursuant to this chapter shall provide for the redemption
of benefits accepted by retail food stores . . . except that retail food stores . . .
shall be authorized to redeem their members' food benefits prior to receipt
by the members of the food so purchased, retail food stores authorized to
accept and redeem benefits through on-line transactions . . .  and public or
private nonprofit group living arrangements that serve meals to disabled or

---

[4] Washington's current authorization to participate in the food stamp program is found in RCW 74.04.500 et seq.

[5] For a detailed, although relatively concise, history of the program, visit the USDA website: *A Short History of SNAP*, U.S. DEP'T AGRIC. FOOD & NUTRITION SERV., https://www.fns.usda.gov/snap/short-history-snap (last visited Oct. 12, 2018).

blind residents shall not be authorized to redeem benefits . . . .
Notwithstanding the [described groups] . . . may be authorized to redeem
benefits. . . . No financial institution may impose on or collect from a retail
food store a fee or other charge for the redemption of benefits.

Consistent throughout this statute is the fact that "redemption" is the process by which

retailers receive reimbursement from the government.

The program includes a civil administrative enforcement provision that leads to

the disqualification of businesses that violate provisions of the act. 7 U.S.C. § 2021.

Criminal enforcement provisions of the food stamp program are found in 7 U.S.C. §

2024(b) and (c).[6] Those provisions currently provide, in relevant part:

**(b) Unauthorized use, transfer, acquisition, alteration, or possession of benefits**

(1) Subject to the provisions of paragraph (2) of this subsection, whoever
knowingly uses, transfers, acquires, alters, or possesses benefits in any
manner contrary to this chapter or the regulations issued pursuant to this
chapter shall, . . . be guilty of a felony . . . or, if such benefits are of a value
of less than $100, or if the item used, transferred, acquired, altered, or
processed is a benefit that has a value of less than $100, shall be guilty of a
misdemeanor . . . . In addition . . . any person convicted . . . under this
subsection may be suspended by the court from participation in the
supplemental nutrition assistance program.
(2) In the case of any individual convicted of an offense under paragraph (1)
of this subsection, the court may permit such individual to perform work . . .
for the purpose of providing restitution for losses incurred by the United
States and the State agency.

---

[6] The statute also contains a criminal forfeiture provision, 7 U.S.C. § 2024(f).
Property used to facilitate the crime may be forfeited and the proceeds used to reimburse
the costs of investigation and prosecution by federal or state authorities and to carry out
investigation of retail stores. 7 U.S.C. § 2024(f)(2), (4).

**(c) Presentation for payment or redemption of benefits that have been illegally received, transferred, or used**

Whoever presents, or causes to be presented, benefits for payment or redemption of the value of $100 or more, knowing the same to have been received, transferred, or used in any manner in violation of the provisions of this chapter or the regulations issued pursuant to this chapter, shall be guilty of a felony . . . or, if such benefits are of a value of less than $100, shall be guilty of a misdemeanor . . . .  In addition . . . any person convicted . . . under this subsection may be suspended by the court from participation in the supplemental nutrition assistance program.

(Footnote omitted.)  Current subsections (b) and (c) are derived from section 14 of the 1964 Food Stamp Act.  *See* Pub. L. No. 88-525, § 14(b), (c).[7]

The purpose of these provisions, which have largely been untouched since 1964 except to account for the modern format for delivering benefits, is to fight fraud. Multiple congressional reports over the decades reflect this focus.  The 1996 House of Representatives Committee on the Budget provides one of the more concise explanations. H.R. REP. NO. 104-651, at 67-70 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2183, 2200-04. In this bill report, the committee details three categories of fraud in the Food Stamp Program: recipient fraud, street trafficking, and retail food store trafficking:

Recipient fraud varies from the intentional under-reporting of income or inflation of household expenses to elaborate schemes involving the creation of false documents and fictitious identities.  The committee

---

[7] The operative language of both original provisions is virtually identical to the modern statutes.  Subsection 14(b) made it a crime for anyone who "knowingly uses, transfers, acquires, or possesses coupons in any manner not authorized by this Act or the regulations issued," while subsection 14(c) addressed "whoever presents, or causes to be presented, coupons for payment or redemption."

heard testimony describing a recent incident in the State of Washington in which two State welfare caseworkers and a refugee counselor were engaged in a scheme to fraudulently obtain social security and food stamp benefits for at least 300 refugees. The false food stamp applications were prompted by the refugee counselor and the caseworkers, who took kickbacks from the refugees in return for their being certified to receive benefits.

The second method of fraud is street trafficking in food stamp coupons. Street trafficking involves a person who sells, purchases, or barters food stamps for cash or other nonfood items. In many communities, food stamps have become a second currency. The committee heard reports and witnessed undercover video footage of food stamps being traded for cash, drugs, guns, and a stolen car.

. . . .

The third method of fraud is retail food store and wholesale food concern trafficking. USDA is responsible for authorizing retail food stores and wholesale food concerns to redeem food stamps. Currently, over 207,000 retail food stores and wholesale food concerns are authorized to redeem food stamps. Each year, about 30,000 new entities apply for authorization. Also, each year about 30,000 entities are disqualified or become ineligible to redeem food stamps. Approximately 77 percent of all food stamps are redeemed by supermarkets which comprise only about 15 percent of all authorized entities. USDA has found that most retail trafficking occurs in smaller food stores and in other retail entities whose business is not primarily food sales. During fiscal year 1994, USDA compliance investigators reviewed 4,300 entities authorized to redeem food stamps. Of these entities, 1,300 were found to have committed violations serious enough to warrant sanctions, including 902 entities which were trafficking in food stamps.

While neither USDA, OIG, nor GAO can provide an estimate with any certainty as to the amount of food stamp trafficking that occurs each year, trafficking in food stamps is believed by OIG to exceed $1 billion each year. Clearly, the number of trafficking investigations involving multi-million dollar food stamp trafficking operations and the organization with which such operations are operating is on the rise. The committee heard testimony of a case in Brooklyn, New York, in which investigators found an individual who had obtained authorization to redeem food stamps from USDA for a fictitious retail store. In a 22-month period, this fictitious store illegally accepted more than $40 million in food stamps from over 600 restaurants, retail stores, and other businesses. In 1 month alone, this

fictitious store illegally redeemed over $4.7 million in food stamps, nearly 5 percent of all food stamps redeemed that month in New York City.

*Id*. at 68-69.

Under federal food stamp law, "redemption" is the process of obtaining reimbursement from the federal government.

*Washington Law*

As may be expected by the original distribution of duties between the states and the federal government, Washington's initial foray into criminal enforcement of the food stamp law focused on misuse of the benefit by recipients. That offense, codified at former RCW 9.91.120 (1974), made it a crime to misuse food stamps by any "person who resells food stamps . . . or food purchased therewith, and any person who knowingly purchases such resold stamps or food." *See* LAWS OF 1973, 2d Ex. Sess., ch. 6, § 1.

In 1988, Washington expanded its criminal code provisions related to the food stamp program. Former RCW 9.91.120 was recodified as RCW 9.91.140, while two new crimes copied from 7 U.S.C. § 2024(b) and (c) were added to new section 140. *See* LAWS OF 1988, ch. 62, § 1. The new provisions were recodified in 2003 as RCW 9.91.142 and RCW 9.91.144. *See* LAWS OF 2003, ch. 53, §§ 50, 51. RCW 9.91.140 addresses the unlawful sale of benefits; it currently provides that "A person who sells food stamps . . . or food stamp benefits transferred electronically, or food purchased

8

therewith" is guilty of a gross misdemeanor if the value of the benefit is over $100 and is

a misdemeanor if less than that amount.

RCW 9.91.142 defines the offense of food stamp trafficking as:

> A person who purchases, or who otherwise acquires and sells, or who traffics in, food stamps as defined by the federal food stamp act, . . . or food stamp benefits transferred electronically.

The crime is a class C felony if the value exceeds $100, or a gross misdemeanor if the

value is less than $100. RCW 9.91.142(1), (2).

The "unlawful redemption" of food stamps is declared a crime by RCW 9.91.144.

It provides:

> A person who, in violation of 7 U.S.C. Sec. 2024(c), obtains and presents food stamps as defined by the federal food stamp act, as amended, 7 U.S.C. Sec. 2011 et seq., or food stamp benefits transferred electronically, for redemption or causes such stamps or benefits to be presented for redemption through the program established under RCW 74.04.500 is guilty of a class C felony punishable according to chapter 9A.20 RCW.

It was this provision that Mr. Gray was charged under.

Washington's redemption statute is lifted nearly verbatim from the federal

redemption statute. [8] Accordingly, federal case law interpreting § 2024(c) is persuasive

authority concerning the meaning of Washington's statute. *Peoples State Bank v. Hickey*,

---

[8] The scant legislative history materials from 1988 do not shed any light on this statute. Three committee hearings are still extant in the Washington State Archives, but nearly all of the limited discussion therein involved section 140 except for a couple of remarks concerning trafficking in food stamps (section 142).

55 Wn. App. 367, 371, 777 P.2d 1056 (1989).  The federal administrative scheme also clearly suggests that "redeem" only applies to approved vendors—typically merchants and their agents, as well as specified nonprofit groups providing services to food stamp recipients—who are directed by 7 U.S.C. § 2019 how to "redeem" the food stamps/EBT benefits that they "accepted" from recipients at their respective establishments.

Treating "redeem" as synonymous with "exchange,"[9] the prosecutor argues that Mr. Gray "redeemed" the EBT benefit when he used it to purchase food.  Although that is a colorable argument, we conclude that it fails in light of the prevailing understanding of "redeem" and existing federal practice.

---

[9] The dictionary definition of "redeem" suggests that "exchange" is, at best, a secondary meaning for the word.  *Webster's Dictionary* provides the following edited definition for the word:

> Redeem:  (vt) 1 a: To buy back : repurchase, b: to get or win back, 2 a: to liberate by paying a price : ransom, b (1): to free by force : liberate, (2) to extricate from or help to surmount, c: to release from blame or debt: clear, justify, d: to absolve from the bondage of sin, e: to change from worse to better : purify, f: to put back into proper condition : repair, restore, g: to recover from a state of submersion, 3 a: to repossess upon fulfillment of an obligation : to free from a lien or encumbrance and regain absolute title by payment of an amount secured thereby or by performing the condition securing the same, b (1): to remove the obligation of by payment, (2) to convert into something of value, c (1): to make good : fulfill, (2) to convert into actuality : realize, 4 a: to atone for or cleanse, b (1): to cancel out the detrimental effect of, (2) to make worth while, c: to be accepted in exchange for, 5: to make profitable use of (time), (vi) 1: Deliver, Save, 2: to buy back property : regain title by purchase.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1902 (1993) (formatting omitted).

As noted in footnote 9, the primary meaning of "redeem" is "to buy back; repurchase." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1902 (1993). The subsequent definitions are variations on that theme—the lawful recovery of possession of property, or the restoration of property to a former condition. *Id.* Even where the definition (at 4 c) includes the concept of "exchange," it does so in the context of canceling a debt or otherwise restoring property to value. *Id.* The concept of "redeem" typically does not connote the idea of "exchange." We do not believe that either Congress or the Washington Legislature intended to apply their respective redemption statutes to customers who used improperly obtained food stamp benefits to purchase food from a retail establishment.[10]

Federal criminal cases are in accord with the view that § 2024(b) applies to those who illegally traffic in food stamp benefits, while § 2024(c) applies to those who then seek reimbursement for the food stamp benefits from the government or its agents. *See, e.g.*, *United States v. Hassan*, 211 F.3d 380 (7th Cir. 2000) (defendant purchased food

---

[10] The only Washington case to address this statute at all appears to be an unpublished decision, *State v. Spurgeon*, No. 39426-0-III (Wash. Ct. App. Jan 21, 2011) (unpublished) http://www.courts.wa.gov/opinions/pdf/394260.pdf. There the appellant argued that her prosecution for possession of stolen property (an access device) violated equal protection principles because the more specific statute governing her conduct was RCW 9.91.144. Division Two did not construe the meaning of "redeem" in section 144, but addressed the case solely on an equal protection analysis.

11

stamp benefits at a cash discount from stores that were unauthorized to accept food stamps, in violation of 7 U.S.C. § 2024(b) and then redeemed those benefits to the USDA, in violation of 7 U.S.C. § 2024(c)); *United States v. Hebeka*, 89 F.3d 279 (6th Cir. 1996) (defendant redeemed fraudulently received food stamp benefits to the USDA in violation of 7 U.S.C. § 2024(c)); *United States v. Marshall*, 683 F.2d 1212 (8th Cir. 1982) (defendant purchased food stamp benefits from a beneficiary in violation of 7 U.S.C. § 2024(b) and separately presented the benefits for redemption, knowing them to have been received in a manner not authorized by the Food Stamps Act in violation of 7 U.S.C. § 2024(c)).

These cases reflect the apparent intent of Congress to target different types of fraud in accordance with the type of criminal activity at issue. Those who improperly use food stamps or who traffic in them are punished under § 2024(b). Those who illegally redeem the stamps for cash from the government, typically merchants and their agents, are subject to prosecution under § 2024(c). We believe Washington's statutes largely evidence the same approach.

RCW 9.91.140, as it has since its predecessor statute was enacted in 1973, prohibits benefit recipients from reselling their benefits or food derived therefrom. RCW 9.91.142 addresses anyone who traffics in food stamp benefits by purchasing or acquiring

12

the benefits.[11] RCW 9.91.144 expressly incorporates 7 U.S.C. § 2024(c) and must, therefore, give "redeem" the same meaning as used in the federal statute. Only those people who seek reimbursement from the government for accepting benefits from food stamp recipients "redeem" the benefits.

We hold that RCW 9.91.144 does not apply to a person who illegally uses food stamp benefits to purchase food at a store. It does not appear that any of the food stamp crimes found in chapter 9.91 RCW would apply to Mr. Gray's behavior. It may originally have been possible to file some type of theft-related charges, although now that possibility is probably precluded by CrR 4.3.1(b).

The judgment is affirmed.

Korsmo, J.

WE CONCUR:

Fearing, J.

Pennell, A.C.J.

---

[11] This statute is narrower than its federal counterpart, 7 U.S.C. § 2024(b). The federal provision also punishes any person who "knowingly uses" food stamp benefits contrary to the program's rules, a provision that has no state counterpart.