Bruce Isaacks, Crim. Dist. Atty. and Kathleen A. Walsh, Asst. Dist. Atty., Denton, for appellee.

Before FARRIS, WEAVER and HICKS, JJ.

**Dennis Jon BROWN, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–93–174–CR.**

Court of Appeals of Texas, Fort Worth.

Aug. 30, 1994.

OPINION

WEAVER, Justice.

Appellant, Dennis Jon Brown, was convicted by a jury of the offense of possession with the intent to deliver a controlled substance. The jury assessed appellant's punishment, enhanced by one prior felony conviction, at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Appellant challenges his conviction through two points of error. In point one he argues the trial court erred in admitting a controlled substance into evidence without a showing of a proper chain of custody, and in point two he contends the trial court erred in allowing the prosecutor to continue prosecuting the case after testifying as a witness before the jury. Because we sustain appellant's second point of error and hold that the trial court erred in allowing the prosecutor to continue prosecuting the case, we reverse the judgment of the trial court and remand this cause for a new trial. Because of our disposition of point of error two, it is unnecessary to address point of error number one.

On November 14, 1991, appellant and a companion, Gordon Albert, Jr., were stopped for speeding on Interstate 35 by Donald Burr, a Texas Highway Patrolman. After being stopped, appellant, who was driving,

exited his car and met Burr between the two vehicles. Albert remained in the car.

According to Burr, appellant was very nervous. He moved his hands very quickly and he could not stand still while Burr was talking to him. When appellant told Burr he did not have his driver's license on him, Burr allowed him to go back to the car to get it, but Burr followed appellant and kept a close watch on him as he got his driver's license. After appellant got his driver's license, Burr began issuing him a speeding citation. During this time, Burr became increasingly concerned about appellant's nervousness because appellant kept sticking his hands in an inside jacket pocket.

Because of appellant's nervousness and the appearance of his eyes, Burr was under the impression appellant might be intoxicated. Burr asked appellant if he had been drinking, and then moved to the passenger side of appellant's car to speak with Albert. When Burr opened the passenger door, he smelled marijuana. He then questioned appellant and Albert about whether they had been smoking marijuana and whether there was any more marijuana in the car. Both appellant and Albert responded that they had smoked some marijuana earlier in the evening.

Burr returned to the task of issuing appellant a ticket, but appellant again continued to stick his hand inside his coat against Burr's direction. At one point Burr could not get appellant's hand out of his pocket, so Burr and his partner handcuffed appellant and searched him for weapons. During the search Burr found a large bag of pills in the pocket where appellant kept sticking his hand. Appellant told Burr the pills were steroids. Burr then arrested appellant for possession of a controlled substance. The pills were later identified as N–hydroxy–3,4–methylenedioxyamphetamine, known in street terms as "Ecstasy."

After arresting appellant, Burr returned to appellant's vehicle to talk to Albert. At this time, Burr discovered what he believed to be additional narcotics in the vehicle on the passenger side. Specifically, Burr found a baggy containing a white powdery substance. This baggy was located in Albert's jacket pocket. The jacket was laying on the passenger seat and Albert was sitting on top of it. The white powdery substance contained in the baggy was later identified as cocaine.

Burr also arrested Albert for possession of a controlled substance. Albert was originally indicted for possession of cocaine and appellant was originally indicted for possession of Ecstasy. However, the charges against Albert were dismissed three or four days before appellant's trial, and appellant was indicted for both possession with intent to deliver Ecstasy and possession with intent to deliver cocaine.

The State tried the case against appellant on the theory that when appellant went back to the car to get his driver's license, he took the bag of cocaine out of his pocket and left it with Albert. Appellant's theory of the case was that he had bought the pills on the night of the incident thinking they were steroids, and that the cocaine belonged to Albert.

During trial, Albert provided testimony against appellant that was consistent with the State's theory of the case. Albert testified that after appellant had first gotten out of the car, appellant came back and handed him a bag of something. According to Albert, it was dark and he did not know what the baggy contained, and without thinking he just put it in the inside pocket of his jacket. Albert also testified that while he and appellant were in jail, appellant told him that the pills were Ecstasy and not steroids.

Burr's testimony contradicted the State's theory and Albert's testimony that appellant gave him the cocaine. Appellant's nervousness had caused Burr to also be nervous, and when appellant went back to his car to get his driver's license, Burr watched him closely and did not see appellant reach in his pockets or hand Albert anything.

On cross-examination, Albert was questioned as to whether he made a deal with the State whereby the case against him would be dismissed in return for his testimony against appellant. Albert maintained he did not have any agreement with the State which required him to testify against appellant.

In his second point of error, appellant contends the trial court erred in allowing the prosecutor to continue prosecuting the case after testifying as a witness before the jury. After the defense rested, the lead prosecutor in this case, Heather Rattan, was called to rebut defensive evidence that the State had made a deal with Gordon Albert. Ms. Rattan testified that she is assigned to prosecute all felony drug cases in Denton County, and that she is the person who determines if a deal should be made with a co-defendant. She further testified that no deal was made with Gordon Albert and that the case against him was dismissed without any requirement that he testify against appellant.

Following Ms. Rattan's testimony, both sides closed. Before each side made closing arguments, appellant made a motion that Ms. Rattan not be allowed to continue as lead counsel and not be allowed to make the State's closing argument because she had made herself a material witness to the case. According to appellant, it would be inherently unfair for Ms. Rattan to put her credibility in issue and then be allowed to argue the case to the jury. The trial court denied appellant's motion and Ms. Rattan was allowed to make the State's closing arguments.

In *Beasley v. State,* 728 S.W.2d 353 (Tex. Crim.App.1987), the court of criminal appeals noted that it would be highly improper for a district attorney to serve as a witness, then resume conducting the State's case, and then "to argue to the jury (in effect testify) that *his* version of events was more credible than was appellant's." *Id.* at 357 n. 5. This is exactly what occurred in the present case. During the State's closing argument, Ms. Rattan argued to the jury that appellant's version of events, that he thought he was buying steroids, was not believable. She also argued that there was no deal with Gordon Albert. Specifically, she argued "[n]ow, the Defense Attorney says that I say that no deal was made and I'm your public servant and I'm lying to you."

The State argues that Ms. Rattan was not testifying as a fact witness, but that her testimony was presented only for purposes of rebuttal on a collateral matter. The State further argues that appellant was not preju-

diced by Ms. Rattan's serving in the two roles of witness and prosecutor in the case. We disagree.

 Ms. Rattan gave the State's closing arguments after she had put her credibility in issue by testifying as a witness. In effect she testified to the jury during closing arguments that her version of events was more credible than appellant's version of events. Under these circumstances the trial court erred in allowing her to continue prosecuting the case after she testified as a witness in the case, and we cannot say beyond a reasonable doubt that this error did not contribute to appellant's conviction. *See* Tex.R.App.P. 81(b)(2). Appellant's second point of error is sustained.

The judgment of the trial court is reversed and this cause is remanded for a new trial.