*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0032P (6th Cir.)
File Name: 02a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            *v.*                                      No. 00-5849

SHEILA KAYE CANTRELL,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 99-00024—Joseph M. Hood, District Judge.

Submitted: October 31, 2001

Decided and Filed: December 17, 2001[*]

Before: SILER and COLE, Circuit Judges; STAFFORD,
District Judge.[**]

————————————

[*] This decision was originally issued as an "unpublished decision" filed on December 17, 2001. On January 3, 2002, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable William Stafford, Senior United States District Judge for the Northern District of Florida, sitting by designation.

1

———————————

**COUNSEL**

**ON BRIEF:** Stephen W. Owens, OWENS & WRIGHT, Pikeville, Kentucky, for Appellant. Kenneth R. Taylor, Charles P. Wisdom, Jr., John Patrick Grant, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

———————————

**OPINION**

———————————

STAFFORD, Senior District Judge.

Appellant, Sheila Kaye Cantrell, appeals her convictions for conspiracy to commit mail fraud, mail fraud, and money laundering. We affirm.

### I. BACKGROUND

Cantrell's convictions arose from a plan to misappropriate her deceased sister's life insurance proceeds. Her sister, Susan Tackett ("Tackett"), was an employee with the United States Postal Service at the time of her death. As a federal employee, she had a Federal Employees' Group Life Insurance ("FEGLI") policy, which was administered by the Metropolitan Life Insurance Company ("Metlife"). Tackett shot herself in the head on April 19, 1993, and died two days later.

A few days after Tackett's death, a designation of beneficiary form was filed with Metlife. The form purported to change the beneficiaries of Tackett's policy from Michael Tackett, whom Tackett sued for divorce in early April, 1993, to Cantrell and Amanda Doyle, Cantrell's mother. The designation form was dated April 1, 1993. One of Cantrell's sisters, Charlene Chapman ("Chapman"), identified Cantrell's handwriting on the designation form. Chapman testified that

after Tackett shot herself, Cantrell asked her if she would "like to go in halvers on a life insurance policy with Susie [Tackett] because she's already dead."

One of the witnesses who signed the designation form, Teri Epling ("Epling"), testified that she signed the designation form at Cantrell's request after Tackett's death. Epling admitted that she did not witness Tackett signing the designation form. A second witness signature, "Clyde Stacy," was purportedly that of William Clyde Stacey ("Stacey"). Stacey testified that he did not remember signing the form, although he conceded that he "was under a lot of alcohol at that time and it's a possibility that I did, but I doubt it." Like Epling, Stacey did not recall seeing Tackett sign the form. An FBI documents examiner who inspected the signatures on the designation form testified that: (1) Cantrell may have prepared the hand printing above the "Witnesses to Signature" section on the form; (2) there were characteristics in the "Susan Alcazar Tackett" signature that were consistent with Cantrell's known writing; (3) there were characteristics in Tackett's known writing that were not present in the "Susan Alcazar Tackett" signature; and (4) there were writing characteristics in Stacey's known writing that were not present in the "Clyde Stacy" signature.

Metlife received a claim for Tackett's life insurance proceeds on August 30, 1994. Metlife promptly processed the claims, creating two total control accounts, each with a balance of $86,276.23, in the names of Sheila Doyle (Cantrell's maiden name) and Amanda Doyle ("Doyle"). On September 13, 1994, Metlife sent letters through the United States mail to Cantrell and Doyle to inform them that a deposit had been made into a total control account for each of them. Checkbooks were also sent through the mail to Cantrell and Doyle so that they could access the insurance proceeds by writing checks.

On September 15, 1994, two checks in the amount of $86,276.23 were written--in the same hand--to remove the entire balances from both total control accounts. Doyle, with

another daughter, Ethyl Mullins, went to the Matewan National Bank to cash the checks.  The funds were transferred from the Metlife total control accounts in Boston to Matewan National Bank of West Virginia.  The proceeds were later distributed among various family members.  Doyle received half the proceeds; Cantrell received $11,400; various other family members received $5,700 each.

## II.  DISCUSSION

### A.

Cantrell first argues that there was insufficient evidence to support her convictions for conspiracy to commit mail fraud, mail fraud, and money laundering.  Specifically, she maintains that the government failed to prove, beyond a reasonable doubt, (1) that she knowingly and willingly used the mail or caused the mail to be used to defraud another party, as purportedly required to prove mail fraud; (2) that she knowingly engaged in a transaction, the subject of which was criminally derived property, as required to prove money laundering; and (3) that she entered into an agreement with others to commit mail fraud, as required to prove a conspiracy to commit mail fraud.

When reviewing the sufficiency of the evidence to support a conviction, we must assess the record in the light most favorable to the government and must affirm the verdict unless no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995).  Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.  *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.1986).

A conviction for mail fraud requires proof beyond a reasonable doubt that the defendant knowingly and willfully devised a scheme to defraud that involved a use of the mails for the purpose of executing, or attempting to execute, the scheme to defraud.  *United States v. Oldfield*, 859 F.2d 392,

to Cantrell's simultaneous convictions for section 1341 and 1957 offenses.

## III.  CONCLUSION

Finding no merit to the issues raised by Cantrell on appeal, we AFFIRM.

and for the separate underlying offense of stealing from a program receiving federal funds in violation of 18 U.S.C. § 666. *United States v. Kirkland*, Nos. 93-2231, 2313, 1994 WL 454864 (6th Cir. Aug. 22, 1994), *cert. denied*, 515 U.S. 1136, 115 S. Ct. 2567, 132 L. Ed. 2d 819 (1995). In *Kirkland*, the court determined that Congress intended section 1957 money laundering to be a separate criminal offense from the underlying section 666 offense.

The court explained:

> We also find that Congress intended to create two distinct crimes. . . .The Tenth Circuit found "Congress intended 1957 to be a separate criminal offense which is punishable in addition to the underlying 'specified unlawful activity'." *United States v. Lovett*, 964 F.2d 1029, 1042 (10th Cir.1992). Logically this must be true or else § 1957 would serve only as an alternative charge for each "specified unlawful activity" listed in the statute and not a separate criminal offense. There is no evidence that Congress intended to create only an alternative and not a separate and distinct offense.

*Kirkland*, 1994 WL 454864, at *5. The *Kirkland* court also found that the section 1957 offense was distinct from the section 666 offense because it required proof of the additional fact that a monetary transaction occurred once funds were illegally obtained under section 666. *See also United States v. Lovett*, 964 F.2d 1029, 1042 (10th Cir.) (concluding that, "through the monetary transaction statute, § 1957, Congress intended to separately punish a defendant for monetary transactions that follow in time the underlying specified unlawful activity that generated the criminally derived property in the first place"), *cert. denied*, 506 U.S. 857, 113 S. Ct. 169, 121 L. Ed. 2d 117 (1992).

We agree that Congress intended separate punishments for section 1957 offenses and for the "specified unlawful activity" underlying the section 1957 offense. We accordingly find that there was, and is, no double jeopardy bar

400 (6th Cir. 1988). The government does not have to show that the defendant actually used the mails but must show "that the defendant acted with knowledge that use of the mails would follow in the ordinary course of business, or that a reasonable person would have foreseen use of the mails." *United States v. Crossley*, 224 F.3d 847, 857 (6th Cir. 2000) (quoting *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997)).

To obtain a conviction for money laundering in violation of 18 U.S.C. § 1957, the government must prove beyond a reasonable doubt that the defendant engaged or attempted to engage in a monetary transaction in criminally derived property, with such property valued at more than $10,000, and with such money actually being derived from specified unlawful activity. 18 U.S.C. § 1957. The statute defines a "monetary transaction" as "the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution." 18 U.S.C. § 1957(f)(1). "Criminally derived property" is "any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(2).

A conviction for conspiracy to commit mail fraud requires proof beyond a reasonable doubt that the defendant knowingly and willfully joined in an agreement with at least one other person to commit an act of mail fraud and that there was at least one overt act in furtherance of the agreement. *Crossley*, 224 F.3d at 856. Circumstantial evidence that a reasonable person could interpret as showing participation in a common plan may be used to establish the existence of a conspiracy agreement. *Id.*

We think, in this case, that there was ample evidence from which a rational juror could have found the essential elements of each of the three crimes beyond a reasonable doubt. Among other things, the jury heard testimony (1) that Cantrell tried to convince one of her sisters, Charlene Chapman, to participate in a scheme to share in their deceased sister's life

insurance proceeds; (2) that, after her sister's death, Cantrell convinced two persons to witness the purported signing of a designation of beneficiary form changing the beneficiaries of her sister's life insurance policy; (3) that Cantrell knew, or should have known, that use of the mails would follow in the wake of her actions to fraudulently obtain the proceeds of her sister's insurance policy; (4) that Metlife in fact used the United States mail to inform Cantrell and her mother that deposits had been made into total control accounts for their benefit and also to send checkbooks for their use in accessing the funds in those accounts; (5) that Cantrell devised a plan to distribute the proceeds from both total control accounts to various family members; (6) that Cantrell and her mother each signed a Metlife check to transfer the funds from the total control accounts to their local bank, which issued cashier's checks to Cantrell, her mother and various siblings; and (7) that Cantrell received $11,400 of the total amount withdrawn from the two total control accounts. Given our review of the record, we find that Cantrell's challenge to the sufficiency of the evidence is without merit.

### B.

Cantrell also argues that her simultaneous convictions for mail fraud and money laundering were barred by the Double Jeopardy Clause, which provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Cantrell contends that simultaneous convictions for mail fraud and money laundering were prohibited because "there was no way to prove money laundering under 18 U.S.C. § 1957 in this case without also proving the facts for the underlying offense of mail fraud." In support of her argument, Cantrell cites *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). In *Blockburger*, the United States Supreme Court announced the following test for determining whether two convictions are barred by the Double Jeopardy Clause:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*Blockburger*, 284 U.S. at 304.

The Court has since made clear, however, that the *Blockburger* test is not controlling where there is a clear indication that Congress intended cumulative punishments for violations of two statutes. For example, in *Missouri v. Hunter*, 459 U.S. 359, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983), the Court explained:

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Missouri v. Hunter*, 459 U.S. at 368-369; *see also Albernaz v. United States*, 450 U.S. 333, 340, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981) (explaining that the Blockburger analysis is controlling only where there is no indication of contrary legislative intent). Indeed, the Sixth Circuit has repeatedly said that the first step in the analysis is to determine whether Congress intended to punish each statutory violation separately. *United States v. Hebeka*, 89 F.3d 279 (6th Cir.), *cert. denied*, 519 U.S. 999, 117 S. Ct. 496, 136 L. Ed. 2d 388 (1996); *Pandelli v. United States*, 635 F.2d 533 (6th Cir. 1980).

While it appears that the Sixth Circuit has not addressed a double jeopardy challenge to convictions for section 1957 money laundering and the separate underlying offense of mail fraud, the circuit court has addressed a double jeopardy challenge to convictions for section 1957 money laundering