NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3023
_____

UNITED STATES OF AMERICA

v.

PAUL F. BASILE,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-11-cr-00134-001)
District Judge:  Honorable Paul S. Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
June 6, 2014

Before:  HARDIMAN, SCIRICA and ROTH, *Circuit Judges*.

(Filed: July 1, 2014)
_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

After years of routine payments to the Internal Revenue Service, Paul and Barbara

Basile tested the familiar adage about the certainty of taxes. Beginning in the 1990s, the

couple concealed their earnings in shell corporations and offshore bank accounts,

underreported their income, and in some years filed no tax returns at all. Unsurprisingly, the IRS started investigating, and for ten years the Basiles resisted civil collection efforts and offered tax-denier arguments that we and other courts have repeatedly rejected. This culminated in a criminal trial in which husband and wife were found guilty of tax evasion, among other charges. On appeal, the Basiles challenge the jury instructions and the District Court's determination of the amount of restitution owed. Barbara Basile also challenges the procedural and substantive reasonableness of her sentence. We will affirm.

I

The Basiles attended chiropractic school together and in 1981 opened a chiropractic practice in Allentown, Pennsylvania. Until the early 1990s, the couple filed a joint individual income tax return each year and reported the income they earned from their business. In what became a fateful decision, they then hired a Colorado company named Tower Executive Resources to "protect [their] assets," as Mr. Basile described it.[1] A1263. Tower established two foreign corporations to handle and conceal the income from the Basiles' chiropractic business, and also billed one of the foreign companies for "services rendered" in amounts the Basiles suggested to reduce the business's taxable income, with the proceeds diverted to an offshore bank account. The couple later

_____

[1] Tower shut down as the result of a federal investigation, and the company's founders later went to prison for tax offenses. On cross-examination, Paul Basile admitted he was aware that the company was under investigation as early as 1999.

established other corporate entities for their business income.

In 2001, the IRS began auditing the Basiles' business and personal returns for tax years 1995 to 1999, and then 2000 and 2001. The audit prompted Paul to begin seeking additional information about the tax code, including from individuals linked to the tax protestor movement; the Basiles subsequently failed to cooperate with the IRS investigation and ensuing collection efforts. At a meeting at a local IRS office in 2003, for example, Paul refused to produce records or answer questions, demanded to see the IRS agents' credentials, and challenged their authority to conduct an audit. Paul also sent the IRS letters in which he argued that the IRS had no right to tax him and that he and his wife's business was exempt from taxation because chiropractors were not engaged in a "trade or business" as defined in the tax code, among other reasons.

The IRS concluded that the Basiles owed a significant amount of money for tax years 1995–2001. The Basiles contested the determination of liability for 1996 and 1997 in U.S. Tax Court, and also appealed the IRS's plan to place levies on the taxes owed for 2000 and 2001. However, the appeals were dismissed and the collection process proceeded after the Basiles ignored discovery requests and failed to appear for trial. Paul also attempted to satisfy the tax liability by sending the IRS fraudulent checks and "foreign bills of exchange"; in a letter, the IRS informed the Basiles that the "bills of exchange" were worthless and could not be used to pay taxes. Throughout this time, the IRS had sent the Basiles other correspondence informing them that courts had rejected

3

their arguments and warning them of the possible consequences of their actions.

Amid the IRS scrutiny, the Basiles took other steps to obscure their income. In 2003, Barbara removed herself and her husband from the payroll processing service the chiropractic business used and instead wrote weekly checks to herself and Paul. Barbara classified these checks as "professional fees" in her bookkeeping software and did not withhold taxes from them. As a result, in 2003–05, the couple did not receive W-2 or 1099 forms, and their income from the business was not reported. Barbara continued to use the payroll service—which withheld taxes—to process other employees' paychecks, however. In 2004, after the IRS issued a summons for bank account records for a Colorado-based entity to which Paul had directed his chiropractic consulting income, Barbara closed the account, changed the name of the entity and opened a new bank account for the funds, which the Basiles used to pay home maintenance expenses. The Basiles also dramatically underreported their income on their 2002 and 2003 individual tax returns and 2002, 2004, and 2005 business tax returns—listing, for instance, total personal income of $742 in 2003—and failed to file their 2004 and 2005 individual tax returns and their 2003 business tax return. In an August 2010 submission to the IRS, they claimed they had no taxable income in 2009 and asked for a refund for 1995, 1998, 1999, and 2001–05.

The Basiles' intransigence prompted criminal proceedings, and in September 2011 the couple was charged in a ten-count superseding indictment with conspiracy to defraud

4

the United States, 18 U.S.C. § 371; tax evasion, 26 U.S.C. § 7201; willful failure to file a tax return, 26 U.S.C. § 7203; and filing false tax returns, 26 U.S.C. § 7206(1). At trial, Paul described the basis for his belief that he and Barbara did not have to pay federal income tax. Barbara did not testify, but her attorney argued that she had acted at Paul's direction and relied in good faith on what he had told her about their tax obligations. In December 2011, a jury found Paul guilty on eight counts and Barbara guilty on seven counts.[2] The District Court sentenced Paul to 78 months in prison and Barbara to 63 months. This timely appeal followed.

## II[3]

The Basiles raise numerous issues on appeal, most related to the jury instructions. We exercise plenary review over whether jury instructions correctly stated the law. *United States v. Friedman*, 658 F.3d 342, 352 (3d Cir. 2011).

### A

First, the Basiles argue that the instructions wrongly permitted the jury to reject their good-faith defense if jurors found their beliefs objectively unreasonable, in violation of *Cheek v. United States*, 498 U.S. 192 (1990). We disagree.

The jury instructions stated:

---

[2] The jury found Paul not guilty of two counts of willful failure to file a tax return and Barbara not guilty of three counts of tax evasion.

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

> *A belief need not be objectively reasonable to be held in good faith*; nevertheless, you may consider whether the Defendant's stated belief about the tax statutes was reasonable as a factor in deciding whether the belief was honestly or genuinely held.

A1685 (emphasis added). This is an accurate statement of law under *Cheek*, which held that a jury instruction cannot require a tax evasion defendant's claimed good-faith belief to be objectively reasonable to negate the government's evidence of willfulness. 498 U.S. at 203. As "[k]nowledge and belief are characteristically questions for the factfinder," such an instruction erroneously transforms a fact question into a legal one. *Id*. However, even though a good-faith belief need not be objectively reasonable, the jury can still *consider* reasonableness in determining whether the belief was honestly held. As the *Cheek* Court noted, "[o]f course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge."[4] *Id*. at 203–04.

---

[4] Barbara also argues that the jury instruction on the reasonableness of the Basiles' beliefs "did not adequately distinguish between Mr. and Mrs. Basile," as it directed the jury to consider whether "*the Defendants*' stated belief was honestly or genuinely held." B. Basile Br. at 22 (emphasis added). She argues that this permitted the jury to conflate her beliefs about the tax code with her husband's, when instead jurors "should have been considering what Mrs. Basile *herself* knew, understood, and intended." This is unpersuasive, as it simply assumes that jurors did not consider Mr. and Mrs. Basile separately—even though the District Court specifically told them to do so. **A1677.** Indeed, the verdict indicates that the jury took this instruction seriously, as Barbara was found guilty of different charges than Paul.

6

B

The Basiles also contend that the District Court erred by instructing the jury that they did not act in good faith

> if, even though they honestly held a certain opinion or belief or understanding, they also knowingly made false statements, representations, or promises to others.

A1686. This sentence comes from the Third Circuit's model instruction on the good faith defense generally, which also states that in tax cases, "the trial judge should give Instruction 6.26.7201-4 (Tax Evasion – Willfully Defined),[5] supplemented if need be under the circumstances of the case, by this instruction." *See* Third Circuit Model Criminal Jury Instruction 5.07.

The Basiles argue that this statement allowed the jury to conclude that they could not have acted in good faith if they knowingly made false statements to others "at any time during the over ten year course of conduct presented in [the] case." P. Basile Br. at 45. As Paul notes, "[j]ust because at some point Mr. Basile may have made a misrepresentation to another person, for whatever reason, does not mean that he did not sincerely believe that he was acting in compliance with his legal duties." P. Basile Br. at

---

[5] The entire instruction reads as follows:

The third element the government must prove beyond a reasonable doubt is

7

45. In essence, he contends that one can knowingly make false statements *and* still be acting in good faith in the tax context. For her part, Barbara argues that the instruction allows false and inaccurate statements in tax returns she crafted in good faith to undermine her entire defense. B. Basile Br. at 27–28.

These arguments stem from the distinctive meaning of "willfully" in tax cases: Willfulness is required for conviction on charges of tax evasion, willful failure to file, and filing false tax returns, but due to the complexity of the tax code, in tax cases the Supreme Court has "carv[ed] out an exception to the traditional rule" that ignorance or a mistake of law is no defense to criminal prosecution. *Cheek*, 498 U.S. at 199–200. Thus, in the tax context, a defendant's behavior is *not* willful if it stems from *honest* ignorance or mistake—that is, good faith.

Given how the good-faith defense interacts with the willfulness requirement, we agree that the "false statements" sentence was confusing as used here. At a minimum, it was overbroad: The fact that a person knowingly made a false statement *regarding one's duty to pay taxes, and in what amount* could be relevant to whether he acted in good faith; whether he knowingly made a false statement about another subject (*i.e.*, "Those frog legs were delicious" or "I'm too tired to work out") would not.

---

that *(name)* acted willfully. "Willfully" means a voluntary and intentional violation of a known legal duty. *(Name)*'s conduct was not willful if *(he)(she)* acted through negligence, mistake, accident, or due to a good faith misunderstanding of the requirements of the law. A good faith belief is one that is honestly and genuinely held.

8

However, even assuming that the jury instructions were imprecise, our inquiry does not end there. We review for harmless error, asking "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 9–10, 15 (1999) (internal citation and quotation marks omitted). Here, the Government did not argue that the Basiles lacked good faith because they had broadly made false statements during the time in question or because they had filed inaccurate tax returns. Rather, it argued they could not have genuinely believed they were complying with the law given their life experience and conduct as it related to paying (or not paying) taxes, relying on considerable supporting evidence to show willfulness. The jury agreed with this, and we see no reason to disturb the verdict based on an unclear but ultimately insignificant sentence in the jury instructions. There is no indication that the instruction obviated an otherwise viable good-faith defense or contributed to the verdict. Any error on this point was harmless.[6]

### III

We also reject Barbara's contention that her sentence is procedurally and

---

[6] Barbara also challenges the District Court's jury instruction on willful blindness, arguing that it "wrongly suggested that willful blindness could satisfy the requirement that Mrs. Basile had the specific intent to violate the law." B. Basile Br. at 30. In her brief Barbara acknowledges that the instruction was "technically correct," but contends that it needed more clarification anyway. We disagree. Even more clearly than in *United States v. Stadtmauer*, where we affirmed in the face of a similar argument, "the Court's instructions made clear that willful blindness applied only to the element of knowledge." 620 F.3d 238, 258 (3d Cir. 2010).

substantively unreasonable.[7] First, we are unpersuaded by her argument that her sentence was procedurally unreasonable because the District Court considered in its determination conduct that was not foreseeable to her— specifically, her husband's submission of fraudulent checks and fictitious foreign bills of exchange. Although Barbara was not convicted of the substantive count involving the submission of the bogus documents, she was convicted of conspiring with her husband for years in a complex effort to defraud the United States. We see no error or abuse of discretion in the District Court's determination that Paul's submission of the fraudulent documents was in furtherance of that conspiracy and was reasonably foreseeable to Barbara such that it could be considered at sentencing. *See Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946); U.S.S.G. § 1B1.3, Relevant Conduct. The District Court was not required to make an explicit foreseeability finding on this point.

Barbara also argues that her sentence was substantively unreasonable because it was disproportionately severe compared to both her husband's sentence and the average tax fraud sentence. We will reverse for substantive unreasonableness only if "no reasonable sentencing court would have imposed the same sentence" on Barbara for the reasons the District Court provided. *Tomko*, 562 F.3d at 568. That is not the case here. Although Barbara was clearly less culpable than Paul, her sentence was 15 months shorter

---

[7] We review sentences for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

than his, and pointing to the average tax fraud sentence is unhelpful because it is unclear whether other defendants were similarly situated.

IV

Finally, both Paul and Barbara contend that the District Court violated the Sixth Amendment by failing to submit to the jury the amount of restitution owed. Because the Basiles did not object to this below, we review for plain error. Under our precedent, the District Court's determination of the restitution amount is not error at all. In *United States v. Leahy*, we held that judicial fact-finding in connection with a restitution order does not violate the Sixth Amendment. 438 F.3d 328, 338–39 (3d Cir. 2006) (en banc). However, the Basiles argue that we must reevaluate that precedent in light of the Supreme Court's recent decisions in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and *Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012), extensions of *Apprendi*[8] holding that facts that increase a mandatory minimum sentence or a criminal fine beyond the statutory limit must be found by a jury. We decline to explore that issue here, because (1) these holdings are not directly applicable to restitution and (2) in any event, the District Court did not commit plain error.

\* \* \*

For the foregoing reasons, we will affirm the judgments of the District Court.

---

[8] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

11