NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0705n.06

Case Nos. 12-5907/12-5966

FILED
*Sep 08, 2014*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CHRISTINA MICHELLE ROGERS and | ) | TENNESSEE |
| TOMMY BLAIR, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: MERRITT, COOK, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**. Christina Rogers, Tommy Blair, and Samuel Clark were charged with bank fraud, 18 U.S.C. § 1344, conspiracy to commit bank fraud, 18 U.S.C. § 1349, and making false statements, 18 U.S.C. § 1014, for their respective roles in a lending fraud conspiracy. This appeal concerns only Rogers and Blair, who proceeded in a joint trial after Clark pleaded guilty to a single conspiracy count. Because the district court committed no reversible error, we AFFIRM as to all the issues raised in this appeal.

I.

In 2005, Samuel Clark expressed interest in purchasing several car wash businesses and a laundromat from Tommy Blair. Clark told his mortgage broker, Christina Rogers, that he would

need a loan to finance the entire purchase and to provide him with surplus cash to use as operating funds for the businesses. Because no bank would approve such a loan, Rogers devised a fraudulent plan, to which Clark and Blair agreed, that involved inflating the value and purchase price of the transaction so that the bank would approve a loan amount greater than the actual purchase price. Blair agreed to sell his businesses to Clark for $3.4 million. On the bank loan application, however, Rogers inflated the purchase price to $4.2 million so that the bank would approve a loan in excess of the actual purchase price. Blair agreed that he would return $125,000 of the proceeds from the sale back to Clark as operating cash for the businesses upon receiving a check from the bank, and Clark agreed that he would reimburse Blair for any additional capital-gains taxes incurred as a result of the difference between the actual purchase price of $3.4 million and the $4.2 million price reported on the loan documents. In addition, Blair submitted falsified tax information (a "Schedule C" form) that overstated the income generated by his businesses so that the bank would conclude that the loan transaction was a safe investment. Based on that information, which Rogers submitted to TruPoint Bank, Clark was approved for a loan to finance 85% of the inflated $4.2 million purchase price — a total loan amount of $3.57 million.

The false information on the loan documents was submitted along with fake checks and a false promissory note, signed by Blair and Clark, and notarized by Rogers, indicating that Clark had made a down payment of 10% of the total purchase price to Blair, and that Blair had agreed to provide seller financing to cover the remaining 5% of the purchase price. At trial, however, Clark testified that he had never actually made any of those payments to Blair and that the purported seller-financing agreement was also part of the sham, designed to deceive the bank so it would provide a loan in excess of the actual $3.4 million purchase price.

2

After the loan closed in April 2006, Blair received a check for the net proceeds of the sale and issued a check to Clark for approximately $125,000, the difference between the actual purchase price and the amount they had obtained from the bank, less closing costs and $17,650 in fees that Rogers claimed for brokering the fraudulent transaction. Thereafter, Clark made only one of the $30,000 monthly payments on the loan. When Blair learned that Clark had stopped making payments on the loan and began to suspect that Clark might not fulfill his earlier promise to repay Blair's capital gains taxes, Blair decided to come clean about the irregularities in the loan transaction.

In January 2011, a federal grand jury charged Blair, Clark, and Rogers with bank fraud, in violation of 18 U.S.C. § 1344, conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and submission of materially false statements to TruPoint Bank, in violation of 18 U.S.C. § 1014. Clark eventually pleaded guilty to a single count of conspiracy to commit bank fraud, 18 U.S.C. § 1349, pursuant to a plea agreement in which he agreed to testify against Blair and Rogers at trial.

At trial, TruPoint Bank official Cameron Forrester testified that Blair called him on August 1, 2006, to inform him that Clark would likely default on the loan. Blair then sent a letter to Forrester, informing him of the $125,000 check he had issued to Clark after the closing. In the following weeks, Blair confessed to Forrester that the checks for the down payment amounts had been forgeries and that the purchase price in the settlement statement had been inflated from $3.4 million to $4.2 million. Blair also sent Forrester a copy of the "real" contract between Clark and Blair, which listed a purchase amount of $3.4 million. Around the same time, Blair recorded a phone conversation with Clark, during which they referred to all three defendants' roles in orchestrating the fraud.

3

At trial, FBI agents testified that Blair walked into an FBI office on September 18, 2006, and asked to speak with them about the fraudulent transaction. Blair allegedly explained the fraud to them that day and revealed additional details throughout the subsequent investigation. The evidence at trial also included the recording of the phone call between Clark and Blair, which Blair eventually turned over to the FBI in an effort to minimize the appearance of his role in the conspiracy. In addition, the trial evidence included the "real" contract wherein Clark and Blair had agreed to the actual sale price of $3.4 million, the falsified Schedule C form, and documents in which Blair had falsely confirmed that Clark paid him a down payment. Blair did not testify at trial. Rogers testified in her own defense, but her testimony actually supported the Government's case by revealing that she had been aware of Clark's personal finances and presumably knew that he could not make the requisite down payment to qualify for the loan she helped broker.

The jury found both Blair and Rogers guilty of bank fraud and conspiracy to commit bank fraud. Blair was also convicted of making materially false statements to TruPoint Bank, and Rogers was convicted of making materially false statements to the FBI. Both were sentenced to 46 months' imprisonment and ordered to repay $1,443,775.73 in restitution to TruPoint Bank.

On appeal, both Defendants challenge their convictions, but for different reasons. Blair argues that the evidence at trial was insufficient to establish that he had the requisite intent to defraud. Blair also challenges the district court's application of the "sophisticated means" enhancement, U.S.S.G. §2B1.1(b)(9)(C), to his base offense level at sentencing. Meanwhile, Rogers argues that the admission of Blair's out-of-court statements violated her rights under the

Confrontation Clause, and that she should have been entitled to a jury finding as to the loss amount for which she was ordered to pay restitution.

## II.

We review an insufficient-evidence challenge by determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Kennedy*, 714 F.3d 951, 957 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). "[The] district court's findings of fact for the purpose of calculating a sentencing range under the [U.S. Sentencing] Guidelines are reviewed under the clear-error standard." *Id.* (quoting *United States v. Hamilton*, 263 F.3d 645, 651 (6th Cir. 2001)). Whether the imposition of restitution was permissible is reviewed de novo. *United States v. Kumar*, 750 F.3d 563, 566 (6th Cir. 2014) (citing *United States v. Boring,* 557 F.3d 707, 713 (6th Cir.2009)). Evidence challenged for violation of the Confrontation Clause is reviewed de novo and is subject to the harmless error analysis of *Chapman v. California*, 386 U.S. 18 (1967). *See United States v. Lloyd*, 10 F.3d 1197, 1216 (6th Cir. 1993).

## III.

### A.

There was ample evidence to support Blair's conviction and to conclude that Blair used "sophisticated means" to perpetrate the fraud within the meaning of U.S.S.G. § 2B1.1. In order to establish Blair's intent, the Government had to prove that he knowingly and willfully joined a conspiracy, the object of which was to defraud the bank. *See United States v. Cantrell*, 278 F.3d 543, 546 (6th Cir. 2001). Here, the evidence at trial was sufficient to establish at least that Blair

knowingly provided materially false information to the bank so that it would provide a larger loan amount than it otherwise would have approved. The jury was presented with documentary evidence that Blair knowingly submitted false tax information and was complicit in additional misrepresentations submitted to the bank in the loan application. Based on the foregoing, it reasonably concluded that Blair had the requisite intent to defraud. In addition, the district court's application of the "sophisticated means" enhancement in determining Blair's sentence was entirely justified in light of his offense conduct, which included falsifying loan documents and other financial documents. *See* U.S.S.G. § 2B1.1 cmt. n.9(B) ("[H]iding assets or transactions, or both, … ordinarily indicates sophisticated means."); *see also United States v. Crosgrove*, 637 F.3d 646, 666-67 (6th Cir. 2011). Accordingly, Blair's conviction and sentence is AFFIRMED.

B.

As for Rogers, any error resulting from the introduction of co-defendant Blair's out-of-court statements against her was harmless. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24. Rogers relies on *Bruton v. United States* for the general proposition that her rights under the Confrontation Clause were violated when the district court allowed the statements of co-defendant Blair, who did not testify at trial, to incriminate her without the opportunity to cross-examine. 391 U.S. 123 (1968). Although Rogers' Sixth Amendment rights may indeed have been implicated by some of the challenged testimony, any such error was harmless given the other evidence of Rogers' guilt. *See, e.g.*, *United States v. McGee*, 529 F.3d 691, 698-99 (6th Cir. 2008) (holding that admission of evidence in violation of

the Confrontation Clause was harmless because independent evidence established the elements of the offense).

Rogers faults the district court for admitting evidence of Blair's incriminating out-of-court statements through the testimony of Forrester, Agent Rushing, and the attorney hired for the loan closing. Rogers also argues that the recorded phone conversation between Blair and Clark violated her rights under *Bruton* and under the rule against hearsay evidence. The problem with Rogers' argument is that all of this evidence was merely cumulative. It did nothing to establish any facts that had not already been established through either documentary evidence or by the testimony of other witnesses, including Clark, who testified about Rogers' role in the conspiracy; the FBI agents, who testified about Rogers' inconsistent statements during their investigation; and the bank official who stated that Rogers submitted false information in the loan documents on behalf of Clark and Blair. Even Rogers' own testimony was damaging to her case, insofar as it established her precise knowledge of Clark's finances and implied that she had known from the beginning that he would not qualify for such a loan under those circumstances.

In sum, the evidence of Rogers' guilt was so overwhelming at trial that the admission of Blair's statements was inconsequential to the overall verdict. Given the overwhelming evidence of Rogers' guilt at trial, the district court's alleged error was harmless, and we AFFIRM Rogers' convictions.

C.

Lastly, Rogers' reliance on the Supreme Court's decision in *Southern Union Co. v. United States* for the proposition she was entitled to a jury finding on the loss-amount for restitution purposes, has been rejected by the majority of circuits that have considered the issue.

In *Southern*, the Supreme Court held that facts increasing the amount of a criminal fine, beyond the statutory maximum, must be submitted to a jury and found to be true beyond a reasonable doubt. 132 S. Ct. 2344, 2357 (2012) (extending the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) to criminal fines). Rogers argues that the holding of *Southern* should logically extend to restitution as well. However, several other circuits have reached a contrary conclusion. *See United States v. Green*, 722 F.3d 1146, 1150-51 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 658 (2013); *United States v. Wolfe*, 701 F.3d 1206, 1216-17 (7th Cir. 2012), *cert. denied*, 133 S.Ct. 2797 (2013); *United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 2038 (2013). This Court recently adopted the analysis of its sister circuits in an unpublished case on this very issue, *see United States v. Jarjis*, 551 F. App'x 261, 261-62 (6th Cir. 2014) (per curiam), *cert. denied*, 134 S. Ct. 1571 (2014), and we find no reason to depart from its analysis of *Southern* in this case. Rogers' challenge to the restitution order based on *Southern* lacks support in this Circuit, as well as in other circuits that have considered this issue. Accordingly, the district court's restitution order is also AFFIRMED.

IV.

For the foregoing reasons, we AFFIRM Blair and Rogers' convictions, Blair's sentence, and Rogers' court-ordered restitution amount.