**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 16, 2014
Decided March 9, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-1304

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 11-10095-001 |
| | |
| ROBERT J. PRINTZ, | James E. Shadid, |
| *Defendant-Appellant.* | *Chief Judge.* |

**O R D E R**

Robert Printz pleaded guilty to wire fraud, 18 U.S.C. § 1343, and money laundering, *id*. § 1957. He was sentenced to 121 months' imprisonment and ordered to pay $6.8 million in restitution. He makes just one claim on appeal: that the Constitution required a jury to decide the amount of restitution. Not only has this court explicitly rejected this argument, but Printz waived any conceivable jury entitlement by pleading guilty and through his plea agreement. Thus, his claim is meritless, and we affirm.

**I**

Printz was a grain farmer. In December 2008 he obtained a multimillion dollar line of credit from CNH Capital to fund operating expenses. The line of credit was secured by Printz's harvests, which he promised to deliver only to grain elevators approved by CNH. One such elevator was Towanda Grain Company Cooperative. By October 2009, Printz had exhausted his borrowing authority with CNH, which refused to make additional advances. In order to raise more cash Printz began delivering grain to elevators that were not on CNH's approved list and did not know about CNH's lien. Printz did not tell CNH about these deliveries or pass along the payments he received from the unapproved elevators. Meanwhile, Printz also was delivering some of his grain to Towanda. Somehow he persuaded Towanda's manager, Timothy Boerma, to disregard CNH's lien and write checks payable to him alone. He also persuaded Boerma to advance amounts significantly more than the value of the grain he delivered. The checks Boerma wrote were drawn on Towanda's own line of credit with CoBank, ACB (an agricultural credit bank). CNH did not know about these deliveries to Towanda. The scheme fell apart when Printz no longer could pay down his CNH credit line or repay Towanda the funds Boerma had advanced. CNH, CoBank, and members of the Towanda co-op all lost money. Towanda fired Boerma, and the Department of Agriculture suspended Towanda's license and arranged its sale to another company.

Printz and Boerma were charged together with multiple crimes, most related to the scheme described above. The government dismissed the remaining counts against Printz in exchange for his pleas of guilty to one count of wire fraud and one count of money laundering. The parties' written plea agreement includes this language:

> The defendant understands and agrees that he may be ordered by the sentencing judge to make restitution to any victim of the offenses, including victims of those offenses which are uncharged or counts which are dismissed pursuant to this plea agreement. The parties to this agreement have not reached a determination on the issue of restitution. The parties acknowledge that the Court may order restitution in whatever amount it deems proper.

The plea agreement also includes Printz's acknowledgment "that by pleading guilty" he was surrendering his "right to trial by jury." During the plea colloquy the district court discussed the restitution paragraph of the plea agreement and made sure that Printz

understood it, in particular the language stating that the court would determine at sentencing the amount of restitution if the parties had not agreed on a figure. The court also ensured that Printz understood that he was waiving his right to a jury trial by pleading guilty.

A probation officer prepared a presentence report calculating a guidelines imprisonment range of 188 to 235 months. The probation officer also recommended that just over $7 million in restitution be imposed under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A. The probation officer compiled a list of victims (principally CNH, CoBank, and members of the Towanda co-op) and detailed their individual losses. Printz did not object to the probation officer's calculation of restitution, and at sentencing his lawyer even told the district court that the probation officer's figure ($7,038,537) "appears to be correct." He said nothing at all about how—or by whom—total restitution was calculated. The district court imposed a below-guidelines prison sentence of 121 months and initially ordered Printz to pay the $7 million figure. Twelve days later, though, the court amended the judgment because of a clerical error, see FED. R. CRIM. P. 36, and reduced the restitution amount to $6,894,537.

**II**

As noted, Printz does not contest the amount of restitution imposed by the district court. Instead he contends, citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that restitution is a criminal penalty and thus the Sixth Amendment requires a jury to determine the amount of restitution. He likens restitution to the statutorily authorized fine of $50,000 per-day analyzed in *Southern Union Company v. United States*, 132 S. Ct. 2344 (2012), which holds that criminal fines are subject to the rule of *Apprendi,* see *id*. at 2357. (Printz also suggests in passing that proof beyond a reasonable doubt was necessary as well. We cannot tell whether these references are intended as a separate argument about the standard of proof, but as we explain below, it makes no difference.) As a fallback, Printz argues that if restitution is a civil penalty, then imposing it without the benefits of a jury trial violates the Seventh Amendment.

Printz has waived his right to have this claim heard, several times over. First, by not objecting to the probation officer's proposed calculation of $7 million and then telling the district court that the figure appeared to be correct, Printz did more than forfeit his constitutional claim; he waived it. See *United States v. Olano*, 507 U.S. 725, 733 (1993) (holding that waiver is "the intentional relinquishment" of a known right); *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005) (noting that waiver is a "deliberate

decision not to present a ground for relief"). Moreover, Printz waived any right to a jury determination of sentencing issues just by pleading guilty. See *United States v. Parker*, 245 F.3d 974, 976–77 (7th Cir. 2001) (noting that defendant who pleaded guilty to charged offense also surrendered right to jury trial on sentencing issues); *United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000) (same). And even if this were not the case, Printz expressly agreed, as part of his plea agreement, that the district court—not a jury—would decide the amount of restitution. See *United States v. Peterson*, 268 F.3d 533, 534–35 (7th Cir. 2001) (concluding that defendant's plea agreement gave district court authority to decide all matters concerning restitution). And by affirmatively stating that the probation officer's $7,038,537 figure "appear[ed] to be correct," Printz also waived any objection to the standard of proof used by the district court (a preponderance, presumably, but the court did not say). See *United States v. Warneke*, 310 F.3d 542, 550 (7th Cir. 2002) ("An admission is even better than a jury's finding beyond a reasonable doubt; it removes all contest from the case"); *United States v. Longstreet*, 567 F.3d 911, 929 (7th Cir. 2009) (quoting *Warneke*).

Waivers aside, this court repeatedly has held, even after *Southern Union*, that restitution is a *civil* penalty, not a criminal one, and so *Apprendi* does not apply. *United States v. Wolfe*, 701 F.3d 1206, 1216–17 (7th Cir. 2012); *United States v. Bonner*, 522 F.3d 804, 807 (7th Cir. 2008). And we are not alone in this assessment: all other circuits that have analyzed *Southern Union* agree that this decision does not extend *Apprendi* to restitution. See *United States v. Rogers*, 580 F. App'x 347, 352 (6th Cir. 2014); *United States v. Rosbottom*, 763 F.3d 408, 420 (5th Cir. 2014); *United States v. Basile*, 570 F. App'x 252, 258 (3d Cir. 2014); *United States v. Green*, 722 F.3d 1146, 1149–51 (9th Cir. 2013); *United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012). Printz gains nothing by re-casting his point as one under the Seventh Amendment. In *Bonner*, which Printz does not acknowledge, we explained that the Seventh Amendment applies to suits at common law for damages, a class to which restitution orders do not belong. *Bonner*, 522 F.3d at 807; see  *United States v. Scott*, 405 F.3d 615, 619 (7th Cir. 2005); see also *United States v. Dubose*, 146 F.3d 1141, 1148 (9th Cir. 1998) (concluding that enforcement provisions of Mandatory Victim's Restitution Act did not convert sentencing into an action at common law within meaning of Seventh Amendment).

The judgment of the district court is AFFIRMED.